# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT CURRY** | |
| Plaintiff, | Civil Action No. 17-2331 |
| vs. | |
| **UNITED PARCEL SERVICE, INC** | |
| AND | |
| **TEAMSTERS LOCAL 623** | |
| Defendants, | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 623's MOTION TO DISMISS

Defendant International Brotherhood of Teamsters Local 623 ("Union" "Local 623"), by its counsel, hereby moves the Court to dismiss WITH PREJUDICE all allegations of Plaintiff Robert Curry, against the Union pursuant to Fed.R. Civ.P. 12(b)(6) as time-barred and for failure to state a claim.

As a hybrid Section 301 action, Curry's case is completely preempted under federal labor law. Moreover, a complainant only has six months to file such a complaint, and it was therefore filed under an expired statute of limitations, which should have been known to Plaintiff Counsel. Curry admits that his claim is untimely under Section 301. See ECF 19 at 1.

However, Curry contends that he presents some novel case to the court, and that that state courts have not ruled on whether unionized plaintiffs can state a claim in Pennsylvania for wrongful termination, and moreover he asserts an equal protection claim under this argument (i.e.

unionized employees are denied equal protection if they cannot assert wrongful termination while unionized employees can). The case law on this notion, in both federal and state court is abundant; there is no cause of action for wrongful termination available to unionized employees in Pennsylvania. Both the state and federal courts have so ruled. And the Third Circuit has considered and rejected Curry's equal protection claim. See ECF 19 at 1.[1] There is nothing novel about it.

I. **PROCEDURAL BACKGROUND**

Robert Curry was an employee of United Parcel Service ("UPS," "Employer," "Company"), and was terminated by the Company on April 22, 2015. Curry was a member of Teamsters Local 623 and filed a grievance, contesting the termination as lacking just cause. Local 623 pursued the grievance on Curry's behalf, taking the case to a joint grievance committee (the equivalent of arbitration) for resolution. The grievance was denied on May 20, 2015.[2] Plaintiff initiated this litigation in August 2016, asserting that he was wrongfully terminated by UPS, and that Local 623 had violated the Duty of Fair Representation ("DFR") owed to Curry in its representation of him in the grievance process. Plaintiff filed Civ. A. No. 16-cv-04482-GJP on 8/15/2016, alleging wrongful termination, first amendment retaliation, and breach of contract/breach of duty of fair representation ("DFR"). He claimed jurisdiction pursuant to 28 USC §§ 1331 and 1367, and 42 USC § 1983. This complaint was amended several times. In the last amendment in 16-04482, ECF No. 31, Curry alleged only breach of CBA/breach of DFR. After motions to dismiss that count were filed, he voluntarily dismissed on 1/24/2017.

Curry then refiled his complaint on May 1, 2017, against UPS and Local 623 in the Pennsylvania Court of Common Pleas alleging wrongful discharge. Local 623 removed to this

---

[1] Counsel for the Plaintiff has managed to keep these frivolous, expired claims alive for almost a year. Local 623 will be moving for sanctions.
[2] After the joint grievance committee rules in discharge cases, there are no further appeals.

Court soon after, noting that this Court has jurisdiction under Section 301 of the Labor Management Relations Act, and Local 623 asserted that Curry's claim was preempted. Notably, in Curry's amended complaint in the current iteration of this matter, 17-02331, ECF 16, Curry alleges wrongful discharge *under the terms of the Union collective bargaining agreement, and admits that Curry is not an at-will employee*. See ECF 16 ¶ 71. Despite that on the very face of the allegations this case is preempted, Curry still argues that his case must be decided in state court.

## II. FACTUAL BACKGROUND[3]

The Employer and Union are parties to a collective bargaining agreement. (Complaint ¶ 70). In or around 1996, Plaintiff became employed by Defendant Employer UPS as a package driver. (Complaint ¶ 6).

Local 623 is a labor organization under the provisions of the National Labor Relations Act, as it is an organization in which "employees participate and which exists for the purpose…of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." (29 U.S.C. § 152(5); see Complaint ¶¶ 3).[4]

On or about April 22, 2015, Plaintiff was called into a meeting at work with UPS Manager John Fiorentino and questioned. (Complaint ¶ 34, Complaint Exhibit A (Termination letter states that Fiorentino is the UPS Feeder Manager)). Plaintiff was terminated by UPS at the conclusion of the meeting. (Complaint ¶ 38). A grievance was filed by Local 623 pursuant to the collective bargaining agreement, contesting the termination. (Complaint ¶ 43; Complaint Exhibit B). A

---

[3] Defendant Union admits only for the limited purposes of this Memorandum that the facts averred in the Complaint are true.
[4] A labor organization is not an employer, pursuant to the National Labor Relations Act. "The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include …any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 152(2). As such the Union does not hire or fire employees. Only employers hire and fire employees.

meeting was held on May 1; the grievance was denied and an official discharge notice was issued. (Complaint ¶¶ 45, 51; Complaint Exhibit A).

On May 14, 2015, Plaintiff was formally notified that a grievance committee would convene on May 19-20, 2015, to hear the Union's grievance for the Plaintiff regarding his termination. (Complaint ¶ 56; Complaint Exhibit E). The Union's grievance contended that Plaintiff should not have been terminated and asked that he be reinstated. (Complaint Exhibit B). Plaintiff attended the meeting. (Complaint ¶ 58). By letter dated May 20, 2015, the committee upheld the Plaintiff's termination, notwithstanding Morris's position at the hearing. (Complaint ¶ 62; Complaint Exhibit I). Plaintiff admits that he received a written copy of the decision within several months of it being issued. (Complaint ¶ 63).

In pleading wrongful discharge, Plaintiff acknowledges that he was not an at-will employee. (Complaint ¶ 71). He further acknowledges that under the terms of the CBA, he could only be terminated by UPS for cause. (Complaint ¶ 72). Curry claims that he was not discharged for cause. (Complaint ¶ 75). Further, and notably, he pleads a violation of the CBA, stating, "…Defendants breached the Collective Bargaining Agreement when they fired Plaintiff without just and/or proper cause…" (Complaint ¶ 77).

### III. ARGUMENT

#### A. STANDARD FOR MOTION TO DISMISS

In deciding a motion to dismiss the Court must accept all well-pleaded allegations in the Complaint as true, and view them in the light most favorable to the Plaintiff. <u>Oatway v. Am. Int'l Group, Inc.</u>, 325 F.3d 184, 187 (3d Cir. 2003). The Court will grant a motion to dismiss where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). In deciding a motion

to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), courts look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). Courts must accept as true all *well-pleaded allegations* in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir.1985)(emphasis added). The Court is not required to "credit bald assertions or legal conclusions improperly alleged in the Complaint." In Re: Rockefeller Ctr. Props., Inc Sec Litig., 311 F.3d 198, 216 (3d Cir. 2002). The question is whether the Plaintiff can prove any set of facts in support of his claim that entitles him to relief. If he cannot, then the motion to dismiss should be granted. Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 195-96 (3d Cir. 2000).

In reviewing a motion to dismiss courts must conduct a two part analysis of a plaintiff's complaint, whereby legal conclusions are disregarded and well-pleaded facts are accepted:

> 1. [T]he factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; and
> 2. [A] District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.
>
> [Mitich v. Lehigh Valley Rest. Grp., Inc., No. CIV.A. 12-3825, 2012 WL 6209957, at *3 (E.D. Pa. Dec. 12, 2012); Ashcroft v. Iqbal, 6 U.S. 662 (2009).]

Here, based on the well-pleaded facts alleged by Plaintiff, the Plaintiff's claim fails to properly plead a claim upon which the Court may grant relief against Local 623.

### B. CURRY'S CLAIM OF WRONGFUL TERMNATION IS COMPLETELY PREEMPTED BY SECTION 301

Curry's case should be in federal court. Section 301 of the LMRA confers subject matter-jurisdiction to federal courts over suits alleging violations of a collective bargaining agreement.

Allis-Chalmers Corp v. Lueck, 471 U.S. 202, 220 (1985). Curry's claim is preempted by federal labor law because resolution of the claim requires interpretation of the CBA. When the resolution of a state law claim requires one to interpret the terms of a Collective Bargaining Agreement, then that claim must be treated as a § 301 claim under the LMRA or preempted by federal labor law. See 29 U.S.C. § 185.[5]

Section 301 has been interpreted by the Supreme Court to authorize the federal courts to develop a body of federal common law to resolve disputes arising from labor contracts. Textile Workers v. Lincoln Mills, 353 U.S. 448 (1957). Further, Section 301 requires courts interpreting collective bargaining agreements to apply this federal law. Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962). In Lueck, the Court said that "when resolution of a state law claim is substantially dependent on an analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." Lueck, 471 U.S. at 220. In Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, the Court held that state law claims are completely preempted by Section 301 when resolution of such claims requires the interpretation of a CBA. Lingle, 486 U.S. at 413.

The Court reasoned that differing interpretations of labor agreements by both state and federal courts "tend to stimulate and prolong disputes…Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes." Lucas Flour, 369 U.S. at 103–04. The Court explained that "interpretation of collective-bargaining agreements remains firmly in the arbitral realm; judges can determine questions of state law involving labor-management

---

[5] Section 301 of the LMRA states, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

relations only if such questions *do not require construing collective-bargaining agreements*."

Lingle, 486 U.S. at 411 (emphasis added). It is axiomatic that

> [u]nless preemption is given effect, the "federal right to decide who is to resolve contract disputes will be lost…If that occurs, claims involving vacation or overtime pay, work assignments, unfair discharge-in short, the whole range of disputes traditionally resolved through arbitration-could be brought in the first instance by a complaint in tort rather than in contract.
>
> [Lueck, 471 U.S. at 219-20.

Curry styles his case as one of mere "wrongful discharge" under state law.[6] But he references the CBA throughout his complaint, and even though Local 623 had no involvement in the decision to terminate Curry, Local 623 is sued for violating the duty of fair representation owed to Curry. If this was really a simple "wrongful discharge" the Union would not be a defendant.

### C. UNDER SECTION 301, THE STATUTE OF LIMITATIONS WAS EXPIRED WHEN CURRY FILED THE FIRST COMPLAINT IN AUGUST 2016

Curry admits that his complaint is time-barred. Section 301 of the LMRA confers subject matter-jurisdiction to federal courts over suits alleging violations of a collective bargaining agreement. Such claims are considered "hybrid" claims in which the plaintiff alleges that his employer breached the CBA and the union breached its duty of fair representation to its members. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164-65 (1983).[7]

While Section 301 does not expressly set forth a statute of limitations, in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983), the Supreme Court held that the six-month statute of limitations set forth in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to all Section 301 hybrid lawsuits by employees against an employer and

---

[6] There is no cause of action for wrongful termination by unionized employees in Pennsylvania. Cifemi v. Day & Zimmerman, Inc., 529 F. App'x 199, 203 (3d Cir.2013).

[7] "The Supreme Court has viewed the hybrid suit as consisting of two independent, albeit related, causes of action, and has stated that [t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." Vadino v. A. Valey Engineers, 903 F.2d 253, 260 (3d Cir. 1990).

a union. In the instant case the 6-month statute of limitations began to run when Curry learned that the Grievance Committee had denied his grievance.

Failure to proceed with a Section 301 claim within the six months statute of limitations has consistently been found by the courts to be grounds for dismissal. See Williams v. District 1199C, National Union of Hospital and Health Care Employees, AFSCME, AFL-CIO, 1999 U.S. Dist. LEXIS 8823 (E.D. Pa. 1999); Mansley v. Technovation, Inc. and Teamsters Local 158, 1986 U.S. Dist. 21972 (E.D. Pa. 1986).

### D. UNIONIZED EMPLOYEES CANNOT PLEAD WRONGFUL DISCHARGE IN PENNSYLVANIA.

As a unionized employee with just cause job protection, Curry cannot state a claim under Pennsylvania law for wrongful discharge; there is no such claim. Phillips v. Babcock & Wilcox, 349 Pa. Super. 351, 355, 503 A.2d 36, 38 (1986)("because the wrongful discharge action in Pennsylvania was judicially created to protect otherwise unprotected employees from indiscriminate discharge and to provide unorganized workers a legal redress against improper actions by their employers, we hold that an action for the tort of wrongful discharge is available only when the employment relationship is at will"); see Denillo v. Starwood Hotels & Resorts Worldwide, Inc., No. 1412 WDA 2013, 2014 WL 10919357, at *3 (Pa. Super. Ct. June 24, 2014)("Pennsylvania law squarely forecloses all claims pleaded in the amended complaint. Appellant cannot sue for wrongful termination because he was a union employee.")

There is a vast body of case law on this notion. Cifemi v. Day & Zimmerman, Inc., 529 F. App'x 199, 203 (3d Cir. 2013).

> In Pennsylvania, courts have consistently held that "common law wrongful discharge suits cannot be brought by union employees subject to a CBA." Ciferni v. Day & Zimmerman, Inc., 529 F. App'x. 199, 203 (3d Cir.2013); see also Phillips v. Babcock & Wilcox, 349 Pa. Super. 351, 503 A.2d 36,

8

> 37–38 (Pa.Super.Ct.1986); Coppola v. JNESO–Pocono Med. Ctr., 400 F. App'x 683, 684 (3d Cir.2010) (relying on Phillips to conclude that "union employees subject to collective bargaining agreements may not pursue wrongful discharge claims against former employers"); Wood v. Bethlehem Area Vocational Technical Sch., No. 12–4624, 2013 WL 2983672, at *12 (E.D. Pa. June 17, 2013), aff'd sub nom., Wood v. Williams, 568 F. App'x 100 (3d Cir.2014) ("Because Wood was working under a collective bargaining agreement and was not an at-will employee, she cannot maintain a wrongful discharge action, and so we will dismiss this count of her complaint under Fed.R.Civ.P. 12(b)(6)."). In this case, Plaintiff concedes that his employment with Defendant was subject to a CBA... Accordingly, Count I will be dismissed.
>
> [Mitchell v. Cmty. Educ. Centers, Inc., No. CIV.A. 14-5026, 2015 WL 4770652, at *3 (E.D. Pa. Aug. 11, 2015).]

For non-union, at-will employees there is a public policy exception to the at-will doctrine. See Spierling v. First Am. Home Health Servs., Inc., 1999 PA Super 222, ¶ 15, (Pa 1999) ("[W]here the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.")[8] But unionized employees cannot bring a wrongful termination claim and avail themselves of this public policy exception. "This distinction exists because, a union-represented employee, unlike an at-will employee, can contest his dismissal through the grievance procedure outlined in his collective bargaining agreement." Harper v. Am. Red Cross Blood Servs., 153 F. Supp. 2d 719, 721 (E.D. Pa. 2001).

The case law Curry cites for the idea that his complaint is grounded in state law simply does not support his position that a unionized employee can bring a case for wrongful termination

---

[8] At-will employment has been the default in Pennsylvania since at least 1891. Henry v. Pittsburgh & L. E. R. Co., 139 Pa. 289, 297, 21 A. 157, 157 (1891) ("A railroad corporation, or an individual, may discharge an employe with or without cause at pleasure, unless restrained by some contract…"). Only unionized employees have a right to employment unless the employer proves termination is for "just cause."

in Pennsylvania state court. In fact he only cites to two Pennsylvania cases. See Shick v. Shirey, 716 A.2d 1231 (Pa. 1981)(recognizing wrongful discharge for at-will employees in workers' compensation cases); Williams v. Dist. 1199C, No. CIV. A. 99-CV-1425, 1999 WL 391572, at *1 (E.D. Pa. June 15, 1999)(The federal courts have subject matter jurisdiction over Section 301 duty of fair representation cases for union employees). All of the other cases cited by Curry are from other jurisdictions outside of Pennsylvania, are inapplicable and are not binding authority.

### E. CURRY'S EQUAL PROTECTION ARGUMENT LIKEWISE HAS NO MERIT.

Plaintiff argues that he would be denied equal protection under the Constitution if, as a unionized employee, he is treated differently from a non-union employee. The Court should reject this argument. Constitutional protection does not apply, absent state action. Klavan v. Crozer-Chester Med. Ctr., 60 F. Supp. 2d 436, 441 (E.D. Pa. 1999)(liability will attach only if it can be said that the state is responsible for the specific conduct). There is simply no state action in this case.

Moreover, the Third Circuit addressed the idea of "equal protection" for both unionized and non-union employees, in the context of a Section 301 preemption argument, and rejected the equal protection argument. Antol v. Esposto, 100 F.3d 1111, 1121 (3d Cir. 1996), amended, (3d Cir. 1997). Indeed the Third Circuit has stated that there are different "compensating factors" available to union versus non-union employees. In Antol the Third Circuit explained,

> Plaintiffs also contend that preemption of the Wage Law amounts to discrimination against those covered by collective bargaining agreements because other employees can pursue claims under the state statute. (Wagner Act did not seek to penalize workers for joining unions). Although that argument has some surface appeal, it fails to acknowledge the existence of compensating factors when federal law governs employment. Collective bargaining agreements frequently contain provisions for favorable working conditions. A key benefit union status often confers on workers is the presence of a "just cause" standard for discharge or discipline. Even more important, the grievance and arbitration process, a standard feature of

almost all collective bargaining agreements, offers union members a means for quick and inexpensive resolution of contract disputes. Permitting employees to sue in state courts in order to bypass arbitration not only dilutes its effectiveness, but calls into question its very existence. Non-exclusivity of arbitration "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." Federal law rests on the premise that limitation of certain rights afforded by the states is justified by having a uniform labor policy. We are persuaded that procedures for resolving claims for wages, vacation and benefits fall within the category of matters where national policy controls.

[Antol v. Esposto, 100 F.3d 1111, 1121 (3d Cir. 1996), amended, (3d Cir. 1997)(internal citations omitted).]

Similarly, in the instant case Curry had access to the grievance and arbitration process, and theoretically to court review of a hybrid Section 301 claim against the Union. But his case was not successful in front of the joint grievance committee (the equivalent of arbitration). And Curry failed to bring a Section 301 DFR case within the applicable statute of limitations. Just like the plaintiff's lawsuit for payment of wages was preempted by Section 301 in Antol, Curry's lawsuit for "wrongful discharge" is preempted by Section 301 in this case. Moreover, he cannot state a claim for wrongful discharge in Pennsylvania, and this claim should likewise be dismissed.

### F. NO MISCONDUCT BY LOCAL 623 IS ALLEGED

Fed. R. Civ. P. 8 (a) (2) requires a plaintiff to plead a short and plain statement of the claim showing that the pleader is entitled to relief. Allegations which are conclusory are not entitled to an assumption of truth and are insufficient to support claims. Wilson v. City of Philadelphia, 415 F. App'x 434, 436 (3d Cir. 2011).

> To survive a motion to dismiss, the complaint must set forth enough facts to state a claim to relief that is plausible on its face. A claim is plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint

> suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.
>
> [Holmes v. Gates, 403 F. App'x 670, 672 (3d Cir. 2010).]

A union has a duty to fairly represent all of its members, both in collective bargaining with an employer and in its enforcement of the resulting collective bargaining agreement (i.e. in the grievance process). Vaca v. Sipes, 386 U.S. 171, 177 (1967). A breach of this duty occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 190.

Here, the Plaintiff fails to plead specific misconduct by Local 623 in the grievance process which entitles the Plaintiff to relief. He fails to plead any conduct by Local 623 which was *arbitrary* (outside a wide range of reasonableness); *discriminatory* (encompassing only discrimination based on an "invidious" trait such as race, gender, national origin, union membership or internal union politics, that is "intentional, severe, and unrelated to legitimate union objectives) or in bad faith (demonstrated by substantial evidence of fraud, deceitful action or dishonest conduct). See Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 79 (1991); Breininger v. Sheet Metal Workers Local Union No. 6, 493 U.S. 67, 73-74 (1989); Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Employees v. Lockridge., 403 U.S. 274, 301 (1971). He instead implies bad feelings from two years prior to his termination. His vague insinuation of verbal harassment from unnamed Teamsters leadership and their friends is not at all close in time to Curry's termination, certainly not close enough for a fact-finder to find relatedness. (Complaint ¶ 24 – citing only "verbal harassment").

Here there is no misconduct by Local 623. After UPS terminated Curry, Local 623 filed a grievance. Local 623 wrote a letter in support of Curry. Local 623 attended Curry's grievance

panel hearing in support of Curry. Unfortunately, Curry's grievance was denied. Curry fails to plead any facts in his complaint that his entitlement to relief is more than a mere possibility, and for that reason it should be dismissed. See Holmes v. Gates, 403 F. App'x 670, 672–73 (3d Cir. 2010); Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir.2009); Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x 774, 776 (3d Cir. 2009).

### G. LOCAL 623 HAS FULLY REPRESENTED CURRY IN ARBITRATION UNDER THE CBA

Section 3 of the parties' CBA provides for an Atlantic Area Parcel Grievance Committee ("AAPGC"). By contract, this joint employer-union committee hears grievance disputes under the contract. The AAPGC meets monthly. Curry was invited to attend the AAPGC hearing in which his grievance was, and he did in fact attend. (Complaint ¶¶ 56-58). In discharge cases, under subsection G of Section 3 of the CBA, a neutral arbitrator serves as the seventh member of the panel. CBA section 3, subsection E states that the majority decision of the panel is binding on the parties; because *this is an arbitration panel*. Under subsection F neither local, involved officials of the Union or Employer may sit on the Grievance Panel. It is only when there is a deadlocked panel that there is any further arbitration of a grievance, as provided under Section 4. But given that there are seven members of the panel in discharge cases, there would never be a deadlock in reaching a decision in discharge cases. The AAPGC is the final arbiter of discharge grievances under the CBA. See Teamsters Local Union No. 30 v. Helms Exp. Inc., 591 F.2d 211, 212 (3d Cir. 1979)(court considered the award of a joint union/employer grievance committee an arbitration award). "Joint committee awards are reviewed under the same standards as binding arbitration awards". General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc., 372 U.S. 517, (1963); Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32 (3d Cir. 1968).

Consequently, when a final grievance decision is reached, the only "appeal" is litigation – for a party to seek to vacate the arbitration decision in federal court. There is an extremely narrow review by the courts in such cases, with no review of the award on the merits. But more importantly, the Union owes no duty to a grievant to file a complaint to vacate an arbitrator's award in court. See <u>Acevedo v. ILA Local 2062</u>, 174 FS2d 1327 (SDFla. 2001); <u>Shores v. Peabody Coal</u>, 831 F.2d 1382 (CA 7 1984); <u>Bonds v. Coca-Cola</u>, 806 F.2d 1324 (CA 7 1986).

## IV. CONCLUSION

Plaintiff brings a case before this Court under an expired statute of limitations, claiming that the Union owed him a duty and violated that duty. Curry not only fails to plead any specific misconduct by the Union, but he fails to plead any duty by the Union whatsoever to file a complaint to vacate the award of the AAPGC. He cannot plead wrongful discharge under Pennsylvania state law, and his equal protection argument is also unavailing.

For the reasons set forth above, Defendant Local 623 respectfully submits that Plaintiff's Complaint must be dismissed WITH PREJUDICE.

Respectfully submitted,

FREEDMAN AND LORRY, P.C.

Date: July 17, 2017    /S/ Lisa Leshinski
LISA LESHINSKI
PA Attorney I.D. No. 201159
1601 Market Street, Suite 1500
Philadelphia, PA  19103
(215) 931-2557

Attorneys for Defendant International Brotherhood of Teamsters, Local 623