IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT CURRY,<br><br>　　　　　　*Plaintiff,*<br><br>　v.<br><br>UNITED PARCEL SERVICE, INC., *et al.*,<br><br>　　　　　　*Defendants.* | CIVIL ACTION<br>NO. 17-2331 |

**PAPPERT, J.** August 30, 2017

## MEMORANDUM

Robert Curry sued United Parcel Service, Inc. and Teamsters Local 623 in state court asserting a single claim for wrongful discharge. Defendants removed the case to federal court on the basis of preemption and Curry filed a motion to remand. Because Curry's wrongful discharge claim is substantially dependent on analysis of the terms of a collective bargaining agreement, it is completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"). Removal was therefore proper and the motion to remand is denied.

### I.

Robert Curry began working for UPS and joined Local 623 in 1996. (Compl. ¶ 4, ECF No. 1-2.) UPS and Local 623 are parties to a collective bargaining agreement. (*Id.* ¶¶ 60–61.) Curry explains that "[a]t all times relevant, [he] was employed by Defendants under the Collective Bargaining Agreement." (*Id.* ¶ 61.) He "was not an at-will employee." (*Id.*) Curry worked part time for UPS until 2002, when he became a package driver. (*Id.* ¶ 4.) He worked as a CDL Class A truck driver for UPS from July of 2014 until his termination. (*Id.* ¶ 26.)

1

In 2013, UPS's contract with the Teamsters was about to expire and a change in health care plans was under negotiation. (*Id.* ¶ 6.) Curry took an active role in opposing the new plan. He joined a reform union within the Teamsters called "Teamsters for a Democratic Union," traveled to conventions and met with other like-minded members and gained notoriety for his reform efforts. (*Id.* ¶¶ 10–11.) Curry also led a slate of seven individuals to run for leadership of the Teamsters Local 623. Curry and his slate, however, lost by thirty votes. (*Id.* ¶ 22.) Curry contends that he experienced verbal harassment from friends and the Local 623 leadership from the time of the election until he was terminated two years later. (*Id.* ¶ 24.)

On April 17, 2015, Curry stopped at a rest stop on Interstate 95 to use the restroom during his shift. (*Id.* ¶ 28.) Before leaving, Curry saw two co-workers, Sam Mendez and Sal Falice. (*Id.*) After chatting for a few minutes, the drivers returned to their trucks. (*Id.* ¶ 30.) As Curry started his truck, Mendez ran over to him and asked for a quarter. (*Id.*) Curry gave him the quarter and drove off. (*Id.*) He later learned that Mendez had used the quarter to tamper with the air lines on Falice's truck as a prank. (*Id.* ¶ 42.)

On April 22, 2015, Curry was accused of "stealing time" by not clocking out when he stopped to use the restroom on April 17. (*Id.* ¶ 32.) He was also questioned about the quarter. (*Id.* ¶ 35.) Curry explained that he could not remember much of the details. (*Id.*) He was terminated at the conclusion of the questioning. (*Id.* ¶ 36.)

Curry filed two grievances: one for unjust termination and the other for constant harassment. (*Id.* ¶ 39.) A hearing was held on the unfair termination grievance on May 1, 2015. (*Id.* ¶ 40.) The Hearing Panel reiterated that Curry had failed to clock

out for his break and accused Curry of tampering with equipment by giving Mendez the quarter he used to block the air lines in Falice's truck. (*Id.* ¶¶ 40–42.) Curry explained that there was not a system in place for clocking out and that he had never been trained to do so. (*Id.* ¶ 41.) He also denied any knowledge of or involvement with Mendez's prank. (*Id.* ¶ 42.) The Panel upheld Curry's termination. At a hearing on May 19, 2015, a committee affirmed the Panel's decision. (*Id.* ¶ 52.)

Defendants removed this case to federal court on May 23, 2017. (ECF No. 1.) Curry filed a Motion to Remand on June 22, 2017. (ECF No. 10.) Defendants' filed their responses on July 6, 2017, (ECF Nos. 17 & 18), and Curry filed a reply on July 11, 2017, (ECF No. 19). The Court held oral argument on the motion on August 16, 2017. (ECF No. 32.)[1]

## II.

### A.

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have original jurisdiction where the matter in controversy exceeds $75,000 and where there is diversity of citizenship between the parties, *see* 28 U.S.C. § 1332, or where the suit "aris[es] under the Constitution, laws, or treaties of the United States," *id.* § 1331. A suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (quotation omitted)). This well-pleaded

---

[1] The complete procedural history of this case—which is quite extensive—is recounted in the Court's Memorandum with respect to Defendants' motions for sanctions pursuant to 28 U.S.C. § 1927. (ECF No. 36.)

complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)).

The well-pleaded complaint rule, however, is not absolute. In limited circumstances a defendant may remove a complaint notwithstanding its reliance on state law. *Trans Penn Wax Corp. v. McCandles*, 50 F.3d 217, 228 (3d Cir. 1995). "One such circumstance is when a state-law claim is preempted under section 301 of the LMRA." *Id.* (citing *Caterpillar*, 482 U.S. at 393); *see also In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 422 (3d Cir. 2016).

**B.**

"[A]ny state-law cause of action for violation of a collective bargaining agreement is entirely preempted by section 301 of the LMRA." *Beidleman v. Stroh Brewery Co.*, 182 F. 3d 225, 232 (3d Cir. 1999) (citing *Avco Corp. v. Int'l Assoc. of Machinists & Aerospace Workers*, 390 U.S. 557, 559 (1968); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) (emphasis added)). Thus, "[w]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, that claim must be either treated as a § 301 claim or dismissed as preempted by federal-labor contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Courts consistently apply this rule to find that state-law claims that would substantially depend on a factfinder's interpretation of a collective bargaining agreement are preempted by § 301. *See, e.g.*, *Hughes v. United Parcel Service, Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016) (affirming district court's dismal of complaint where state law claims were preempted by the LMRA); *Roberts v. Spruce Manor Nursing &*

4

*Rehabilitation Center*, No. 14-4338, 2015 WL 4771020, at *3–4 (E.D. Pa. Aug. 12, 2015); *Henderson v. Merck & Co., Inc.*, 998 F. Supp. 532, 536–38 (E.D. Pa. 1998).

This case will substantially depend on the interpretation of the Collective Bargaining Agreement.[2] Curry's complaint alleges that UPS and Local 623 were parties to a collective bargaining agreement, and that at all times, he was employed by UPS under the Collective Bargaining Agreement. (*Id.* ¶¶ 60–61.) The Complaint asserts just one count against Defendants for wrongful discharge. That count plainly alleges a violation of the Collective Bargaining Agreement: "Defendants breached the Collective Bargaining Agreement when they fired [him] without just [or] proper cause." (Compl. ¶ 67.)[3] The Collective Bargaining Agreement is the very crux of Curry's Complaint; its interpretation will be necessary to determine whether he was wrongfully discharged and therefore Curry's claim is completely preempted by § 301 of the LMRA.[4]

---

[2] Curry relies on authority, including *Shick v. Shirey*, 716 A.2d 1231, 1232 (Pa. 1998), to explain that his claim is properly grounded in state law. *Shick* recognized a common law cause of action for wrongful discharge in Pennsylvania for at-will employees. *Id*. But this assertion is inapposite. There is no dispute that a wrongful discharge claim exists in Pennsylvania. But where, as here, a plaintiff's complaint of wrongful discharge substantially depends on the interpretation of a collective bargaining agreement, it is preempted by the LMRA.
   In any event, *Shick* recognized a wrongful discharge claim for an *at-will* employee alleging retaliatory discharge for filing a workers' compensation claim. There is no comparable claim available for unionized employees. *See Phillips v. Babcock & Wilcox*, 503 A.2d 36, 36 (Pa. Super. Ct. 1986); *see also Cifemi v. Day & Zimmerman, Inc.,* 529 F. App'x 199, 203 (3d Cir. 2013); *Coppola v. Jneso-Pocono Med. Ctr.*, 400 F. App'x 683, 684 (3d Cir. 2010). And Curry acknowledges this "weight of authority." (Reply, at 1, ECF No. 19.) Curry argues, instead, that *Shick* violates the Equal Protection Clause because it treats at-will employees differently than unionize employees. He also contends that this "argument for extending, modifying, reversing existing law" or for "establishing new law" is reason alone to remand. The Court needn't address these arguments, however, because regardless of whether Curry can state a claim for wrongful discharge as a union employee, Curry's claim is preempted by the LMRA.

[3] If brought under the LMRA, this case would be an example of a "hybrid claim," where an employee asserts statutory claims under the LMRA for breach of the duty of fair representation (against the union) and breach of a collective bargaining agreement (against the employer). *See Bullock v. Dressel*, 435 F.3d 294, 300 (3d Cir. 2006).

[4] In response to Defendants' Motions to Dismiss and Motion for Sanctions, Curry asserts (for the first time) that Defendants' removal was improper because they never filed a state court

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

acknowledgement of removal as required by 28 U.S.C. § 1446(d). (Resp., at 3, ECF No. 25.) After reviewing the state court docket, Curry withdrew this argument at oral argument, (Tr. of Hr'g, at 31:10–32:3; 34:25–36:1), acknowledging that Defendants did, in fact, file such a notice.