IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT CURRY,<br><br>        *Plaintiff*,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., *et al.*,<br><br>        *Defendants*. | CIVIL ACTION<br>NO. 17-2331 |

**PAPPERT, J.**                                                                                                          **August 30, 2017**

<u>**MEMORANDUM**</u>

      Robert Curry sued United Parcel Service, Inc. and Teamsters Local 623 after his termination in May of 2015. The case is resolved on the merits: the Court, by separate Memorandum and Order, denied Curry's motion to remand and granted the Defendants' motions to dismiss with prejudice. *See* (ECF Nos. 34 & 35).

      Before the Court are Defendants' motions for sanctions pursuant to 28 U.S.C. § 1927. (ECF Nos. 20 & 21.) On August 7, 2017, the Court ordered Curry's Attorney, Matthew Weisberg, to show cause why it should not award the Defendants' their costs, expenses, and attorneys' fees incurred as a result of Weisberg's filing of the Amended Complaint. (ECF No. 16). After holding the show cause hearing on August 16, the Court finds Weisberg acted in bad faith and with the purpose to multiply the proceedings through conduct that was unreasonable and vexatious when he filed the Amended Complaint.

I.

A.

Robert Curry worked for UPS since 1996 and was a member of Teamsters Local 623 union.  In 2014, Curry was working as truck driver when UPS terminated him for equipment tampering and failing to clock out during a break at a rest stop.  Curry denied the allegations and contested his termination through the union grievance process.  A panel upheld Curry's termination and a committee affirmed the decision of the panel on May 19, 2015.[1]

B.

The procedural history of this litigation is even more confusing and annoying to recount than it is to read.  Curry initially sued UPS, the International Brotherhood of Teamsters and Local 623 in federal court on August 15, 2016.  *See Curry v. United Parcel Service, Inc. et al.*, No. 16-4482 (*Curry I*), Compl., ECF No. 1.  He asserted claims for wrongful termination, First Amendment retaliation, breach of contract and breach of the duty of fair representation.  *Id.*  Curry attached his termination letter, union grievance forms and related letters to the Complaint.  *Id.*  Defendants filed motions to dismiss on September 15 and 19 arguing, among other things, that Curry, as a union employee, could not assert a claim for wrongful termination[2] and that to the extent he

---

[1]    The facts of this case are outlined in detail in the Court's Memorandum denying Curry's motion to remand.  (ECF No. 34.)

[2]    Union employees cannot assert claims for wrongful discharge in Pennsylvania.  *See Phillips v. Babcock & Wilcox*, 503 A.2d 36, 36 (Pa. Super. Ct. 1986); *see also Cifemi v. Day & Zimmerman, Inc.*, 529 F. App'x 199, 203 (3d Cir. 2013); *Coppola v. Jneso-Pocono Med. Ctr.*, 400 F. App'x 683, 684 (3d Cir. 2010).

alleged a Section 301 claim under the Labor Management Relations Act ("LMRA"), it was barred by that statute's six month limitations period.[3] *Curry I*, ECF Nos. 5, 7 & 14.

On September 29, 2016—days before Curry's deadline to respond to the motions to dismiss—Curry moved for a fourteen-day extension to respond. *Curry I*, ECF No. 17. On October 27, 28 and 31, before the Court ruled on Curry's motion, Defendants moved to have their motions granted as uncontested because Curry had still not responded to them. *Curry I*, ECF Nos. 18, 19, & 20.

On November 1, 2016, Curry explained that he had not timely responded to the motions because his request for additional time was pending. *Curry I*, ECF No. 21. He clarified that he had not merely requested a fourteen-day extension to respond to Defendants' motions but instead had requested a fourteen-day extension that would not begin to run until the Court granted his request for an extension of time.[4] Because the Court had not ruled on his request, he believed that his responses were not due. Relying on *Stackhouse v. Mazurkiewicz*, 951 F.2d 29 (3d Cir. 1991), Curry also asserted that a district court could not summarily grant dispositive motions as uncontested. *Curry I*, ECF No. 21, at 3. Curry's filing did not, however, respond to the motions on the merits.

Six days later, on November 7, 2016, Curry filed a "Praecipe to Attach Exhibits" to his November 1 filing. *Curry I*, ECF No. 22. Exhibit A to Curry's Praecipe was a

---

[3] Claims brought under the LMRA are barred by its six-month statute of limitations. *See* 29 U.S.C. § 160(b); *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 155 (1983); *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 260 (3d Cir. 1990).

[4] While this is what Curry requested in the proposed order, it is not what he requested in the body of the motion. Curry simply requested the following: "Plaintiff respectfully requests an additional fourteen (14) days enlargement of time to respond/amend over to Defendants' complex motions so that this Honorable Court may come to a just, fair and accurate determination on the merits." *Curry I*, ECF No. 17, at 2.

3

document labeled "First Amended Complaint." This purported Amended Complaint dropped the wrongful termination and First Amendment retaliation claims and alleged only a breach of the Collective Bargaining Agreement and breach of the duty of fair representation. Like the original Complaint, the remaining exhibits attached to the Praecipe included Curry's termination letter, union grievance forms and related letters. Curry never sought leave to file an Amended Complaint in accordance with Federal Rule of Civil Procedure 15.

Later that day, Curry filed a "Praecipe to Substitute Exhibits," which purported to substitute exhibits he attached to the earlier Praecipe. *Curry I*, ECF No. 23. To this Praecipe he attached another purported Amended Complaint. It included the same "count" as the first Praecipe, but this version of the Amended Complaint was a few paragraphs longer. The remaining exhibits attached to this later Praecipe also included Curry's termination letter and union grievance forms and related letters. Again, Curry did not seek leave to file an Amended Complaint under Federal Rule of Civil Procedure 15.

On November 21, 2016—two months after Defendants filed their original motions to dismiss—Curry submitted a letter to the Court asking that the Court docket his proposed Amended Complaint and deny the Defendants' pending motions as moot. *Curry I*, ECF No. 24. UPS filed a letter in opposition the next day, explaining that Curry's request was a procedurally improper attempt to file a late response to the Defendants' motions. *Curry I*, ECF No. 25. On November 23, the International Brotherhood of Teamsters also explained by separate letter that Curry was simply

attempting to file an Amended Complaint without seeking leave to amend and without responding to Defendants' pending motions to dismiss. *Curry I*, ECF No. 26.

On November 28, Curry filed a motion for leave to file an Amended Complaint. *Curry I*, ECF No. 27. This Amended Complaint included just one count for breach of the Collective Bargaining Agreement and breach of the duty of fair representation.[5] *Id.* The Court granted Curry's motion. While noting that Curry's original attempt at amendment violated Rule 15, the Court reasoned that "the amended complaint narrows the suit to one count." *Curry I*, ECF No. 30. The Clerk docketed Curry's Amended Complaint. *Curry I*, ECF No. 31.

The next day (and before the Court's Order granting leave to amend was docketed), Curry filed a "Praecipe to Substitute Exhibit to Plaintiff's Motion for Leave to Amend Complaint." *Curry I*, ECF No. 29. Attached to this Praecipe was yet another version of Curry's Amended Complaint. It again included just one count, but this purported Amended Complaint was a few paragraphs longer than the Amended Complaint docketed by the Clerk. *Compare Curry I*, Am. Compl., ECF No. 31 *with Curry I*, Praecipe, Ex. A, ECF No. 29.

Defendants UPS and Local 623 filed motions to dismiss the Amended Complaint on December 9 and 13, respectively. *Curry I*, ECF Nos. 32 & 33. Defendants again argued that Curry's claim for breach of the Collective Bargaining Agreement was time-barred by the LMRA's six-month statute of limitations. On December 27, counsel for

---

[5]  While Curry does not explicitly invoke the LMRA in his claim for breach of the Collective Bargaining Agreement, it is clear that he asserts a § 301 claim under the LMRA (and not a state law claim) because his Complaint asserted jurisdiction under 28 U.S.C. § 1331, for claims arising under federal law, not for diversity under § 1332 (the parties are not diverse).

UPS, Local 623 and Curry filed a joint stipulation extending to January 10, 2017 Curry's time to file a response to the motions. *Curry I*, ECF No. 34.

On January 10, Curry sought an additional seven days to respond to the motions.[6] *Curry I*, ECF No. 36.  Before the Court could rule on Curry's motion for an extension of time, Curry responded to Defendants' motions to dismiss. *Curry I*, ECF No. 37.  In his response, Curry acknowledged the six-month statute of limitations bar, but he asked the Court to "extend, modify or reverse existing law." *Curry I*, ECF No. 37, at 7.  Specifically, Curry suggested the Court should follow the dissenting opinions in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983).  Curry explained that the dissenting opinions analogized to state law wrongful discharge claims, which provided for a two-year statute of limitations. *Curry I*, ECF No. 37, at 7.  Curry then confusingly requested the following:

> To the extent this Honorable Court holds Plaintiff's claim in wrongful termination subject to the six-month statute of limitations, Plaintiff agrees this Court bound by United States Supreme Court precedents— Plaintiff's Complaint should then be dismissed (but for Plaintiff's objection for the purpose of preservation).  To the extent this Court holds Plaintiff's putative cause in wrongful termination subject to the two-year Pennsylvania statute of limitations, Plaintiff respectfully requests leave to amend merely to substitute Count I's heading as merely comprising a theory of liability under a claim for wrongful termination.

*Id.* at 7–8.

Curry then relied on *Shick v. Shirey*, 716 A.2d 1231, 1232 (Pa. 1998), a Supreme Court of Pennsylvania case which recognized a common law cause of action for wrongful discharge for at-will employees, to support his argument that his claim really was one

---

[6] Curry again styled his proposed order as requesting seven days from "entry of" the Court's order granting his Motion.  But the body of his motion requesting an extension of time simply requests seven additional days to respond to Defendants' motions.

6

for state law wrongful termination and not a breach of a collective bargaining agreement under the LMRA. Curry then asserted—in his response *opposing* Defendants' motions to dismiss—that the Court *should* dismiss the case for want of jurisdiction. Curry explained that since his claim really should be thought of as a state-law wrongful discharge claim with a two-year statute of limitations, and since there was not complete diversity, the Court should dismiss the Amended Complaint without prejudice.

To recap: in his response opposing Defendants' motions to dismiss, Curry seemingly conceded that his only claim for breach of the Collective Bargaining Agreement was barred by the LMRA's six-month statute of limitations, but then argued that the Court should either (a) think of his claim as a state-law claim for wrongful discharge or (b) let him amend his Complaint to assert a state-law claim for wrongful discharge. And because he now was asserting a state law claim, his Amended Complaint should be dismissed because the Court lacked diversity jurisdiction. That scenario would never present itself on even the most sadistic law school exam.

Defendants UPS and Local 623 filed reply briefs on January 17 and 18.[7] *Curry I*, ECF Nos. 39 & 40. Defendants' motions to dismiss were finally ripe, over five months

---

[7]   Defendants explained that Curry had originally asserted a state-law claim for wrongful termination, but withdrew this count in his Amended Complaint—it thus made no sense to allow amendment for Curry to re-assert this claim.
  In any event, Defendants explained that Curry—as a union employee—could not assert a claim for wrongful discharge under Pennsylvania law. *See Phillips v. Babcock & Wilcox*, 503 A.2d 36, 36 (Pa. Super. Ct. 1986); *see also Cifemi v. Day & Zimmerman, Inc.*, 529 F. App'x 199, 203 (3d Cir. 2013); *Coppola v. Jneso-Pocono Med. Ctr.*, 400 F. App'x 683, 684 (3d Cir. 2010). Defendants also explained that the Court retained jurisdiction because the LMRA completely preempts state law causes of action for violation of a collective bargaining agreement. *See Beidleman v. Stroh Brewery Co.*, 182 F. 3d 225, 232 (3d Cir. 1999) (citing *Avco Corp. v. Int'l Assoc. of Machinists & Aerospace Workers*, 390 U.S. 557, 559 (1968); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962) (emphasis added)). Thus, "[w]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, that claim must be either treated as a § 301 claim or

after the case began. But just six days later, on January 24, 2017, Curry filed a notice of voluntary dismissal. *Curry I*, ECF No. 42. Curry's Complaint was dismissed without prejudice and the case was terminated.

## C.

Three weeks later, on February 13, 2017, Curry sued UPS and Local 623 again, this time in the Philadelphia County Court of Common pleas via a Writ of Summons. *See* (*Curry v. United Parcel Service, Inc. et al.*, No. 17-2331 (*Curry II*), Notice of Removal, ECF No. 1). Curry filed his state court Complaint on May 1, 2017. (*Id.*) This Complaint asserted one count for wrongful discharge under Pennsylvania law. Defendants removed the case to federal court on the basis of complete preemption on May 23, 2017.

On June 12 and 13, UPS and Local 623 filed motions to dismiss. (*Curry II,* ECF Nos. 8 & 9.) They stated yet again that Curry's state-law wrongful discharge claim was preempted by the LMRA and was accordingly time-barred by the LMRA's six-month statute of limitations. Alternatively, Defendants argued that union employees like Curry could not assert a claim for wrongful discharge in Pennsylvania.

Curry filed a motion to remand the case to state court on June 26, 2017. (*Curry II,* ECF No. 10.) Curry relied again on S*hick v. Shirey*, 716 A.2d 1231, 1232 (Pa. 1998), contending that his claim was properly grounded in a state law wrongful discharge claim. But this assertion was beside the point: Regardless of whether Pennsylvania law allowed for unionized employees to state a claim for wrongful discharge (it doesn't), Defendants' position was that Curry's claim was barred because it substantially

---

dismissed as preempted by federal-labor contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

depended on the interpretation of a collective bargaining agreement and was therefore preempted by the LMRA. Curry's invocation of *Shick* was not responsive to Defendants' argument.

Four days later (and nearing the deadline to respond to Defendants' motions to dismiss), Curry filed a motion to stay the case pending the Court's adjudication of his motion to remand or in the alternative, for a fourteen-day extension of time to respond to Defendants' motions to dismiss. (*Curry II,* ECF No. 11.) The Court denied Curry's motion to Stay on June 30. (*Curry II,* ECF No. 13.)

On July 3, 2017, Curry filed yet another motion for extension of time to respond to UPS's and Local 623's motions to dismiss. (*Curry II,* ECF No. 14.) Rather than wait for the Court's ruling on his motion for extension of time, Curry filed a document styled as a "notice," that in reality was an Amended Complaint on the same day. (*Curry II,* ECF No. 15.) Three days later, on July 6, 2017, Curry refiled this document, this time correctly styling it on the docket as an Amended Complaint. (*Curry II,* ECF No. 16.)[8] That same day, Defendants filed responses to Curry's motion to remand. (*Curry II,* ECF Nos. 17 & 18.) Defendants asked the Court to deny Curry's motion to remand, explaining yet again that Curry's state law wrongful discharge claim was completely preempted by the LMRA and, in any event, a unionized employee could not assert a state law claim for wrongful discharge. On July 11, Curry filed a reply brief in support of his motion to remand.[9]

---

[8] This filing is the subject of the Court's show cause Order and this Memorandum discussing potential sanctions for Weisberg under 28 U.S.C. § 1927 and is discussed in detail *infra* at Section III.B.

[9] Curry's reply brief acknowledged that the "weight of authority" supported the Defendants' arguments for denying remand. But Curry did not withdraw his remand motion. Instead, he argued

9

**D.**

On July 17 and 19 respectively, Defendants filed motions to dismiss Curry's Amended Complaint and motions for sanctions pursuant to Rule 11, Local Rule 83.6.1 and 28 U.S.C. § 1927. (*Curry II,* ECF Nos. 20, 21 & 22.) On July 25, Curry filed a "motion to bifurcate, stay and enlarge, or in the alternative, to omnibus respond with enlargement." (*Curry II,* ECF No. 23.) Curry asked the Court to "bifurcate" UPS's combined motion to dismiss and motion for sanctions and asked for a stay all of Defendants' sanctions requests pending adjudication of Curry's motion to remand. (*Id.* at 1.) Curry then separately requested a fourteen-day extension to respond to Defendants' motions to dismiss. (*Id.*) Alternatively, Curry requested a fourteen-day extension to respond to Defendants' pending motions due to the "complexity" of these motions. (*Id.* at 2.) Two days later, however, Curry filed a response in opposition to Defendants' motions for sanctions and motions to dismiss. (*Curry II,* ECF No. 25.)

The Court denied as moot Defendants' initial motions to dismiss, (*Curry II,* ECF Nos. 8 & 9), and Curry's earlier motion for an extension of time, (*Curry II,* ECF No. 14), on August 2, 2017. (*Curry II,* ECF No. 27.) In the same Order, the Court denied Curry's motion to bifurcate, (*Curry II,* ECF No. 23). (*Id.*) Defendants filed reply briefs in support of their motions to dismiss on August 3. (*Curry II,* ECF No. 28 & 29.)

---

that the Supreme Court of Pennsylvania's decision in *Shick* violated the Equal Protection Clause because it treats at-will employees differently than unionized employees. He also contended that this "argument for extending, modifying, reversing existing law" or for "establishing new law" was reason alone to remand. These arguments of course did nothing to rebut Defendants' positions that the LMRA preempted Curry's claims. As already explained, regardless of whether Pennsylvania law allowed for unionized employees to state a claim for wrongful discharge, Defendants argued Curry's claim was barred because it substantially depended on the interpretation of a collective bargaining agreement and was thus preempted by the LMRA.

On August 7, the Court denied in part Local 623's motion for sanctions.[10] (*Curry II,* ECF No. 31.) It also ordered Curry's Attorney, Matthew Weisberg, to show cause at a hearing on August 16, 2017 why it should not award the Defendants' costs, expenses, and attorneys' fees pursuant to 28 U.S.C. § 1927 for Weisberg's filing of the Amended Complaint, (*Curry II,* ECF No. 16). (*Curry II,* ECF No. 31.) The Order specifically explained that "Plaintiff's counsel shall be prepared to address his filing of an Amended Complaint, (*Curry II,* ECF No. 16), which sought relief under the same cause of action as the original Compliant, yet alleged that the Court lacked subject-matter jurisdiction, and show cause why that filing was not made in bad faith with an intent to delay the proceedings before this Court." (*Curry II,* ECF No. 31.) The Order accordingly provided Weisberg "particularized notice" and an "opportunity to be heard" as required by the Due Process Clause of the Fifth Amendment. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 191 (3d Cir. 2002) (citation omitted). The Court also set oral argument on Curry's motion to remand and Defendants' motions to dismiss. (*Id.*)

On August 30, 2017, by separate Memorandum and Order, the Court denied Curry's motion to remand and granted Defendants' motions to dismiss. (*Curry II,* ECF Nos. 34 & 35.) The only issues that remain for disposition are the motions for sanctions pursuant to 28 U.S.C. § 1927.

---

[10] The Court's Order explained that it was denying Local 623's motion for sanctions under Rule 11 because "Federal Rule of Civil Procedure 11 includes a 'safe-harbor' provision, which requires a party to serve a motion for sanctions on an opposing party 21-days before filing the motion with the Court." (*Curry II,* ECF No. 31.) Local 623's safe harbor certificate made clear that it sought relief for Plaintiff's filing of the original complaint in state court. (*Id.*) The Court explained that it would not sanction a party under Rule 11 for a state-court filing. (*Id.* (citing *Dieffenbach v. Cigna Corp.*, No. 07-3685, 2007 WL 4275502, at *5 (E.D. Pa. Dec. 4, 2007).) As for Rule 11's provision allowing sanctions for "later advocating" filings in federal court, because Curry's counsel had not "later advocated" the state Court complaint in federal court at the time Defendant filed the safe harbor certificate, Rule 11 remained inapplicable. (*Id.*)

11

### III.

#### A.

Section 1927 provides that any "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "To impose § 1927 sanctions, a court must 'find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.'" *In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) (quoting *In re Prudential*, 278 F.3d at 188).

"The language and purpose of the statute reflect that these sanctions are aimed at deterring lawyers' bad faith conduct that disrupts the administration of justice by multiplying proceedings," *id.* at 161, or conduct that "intentionally and unnecessarily delay[s] judicial proceedings." *LaSalle Nat'l Bank v. First Conn. Holding Grp.*, 287 F.3d 279 (3d Cir. 2002).

"A court imposing § 1927 sanctions must find bad faith, but that finding need not be made explicitly." *In re Prosser*, 777 F.3d at 162. "Indications of bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (quoting *In re Prudential*, 278 F.3d at 188). The Third Circuit Court of Appeals has also described conduct indicative of bad faith in the context of § 1927 as that which gives "some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay." *Ford v.*

*Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (citations omitted); *see also LaSalle*, 287 F.3d at 288 ("[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal."); *In re Prudential*, 278 F.3d at 188 ("Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." (quotation and citation omitted)); *Baker Ind., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985) ("[C]onduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." (citation and quotation omitted)).

Courts "should exercise this sanctioning power only in instances of a serious and studied disregard for the orderly process of justice." *LaSalle*, 287 F.3d at 288 (citation and quotation omitted). The statute should also be "construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Id.* at 289. (quotation and citation omitted).

### B.

Weisberg filed the Amended Complaint in bad faith in order to multiply the proceedings in an unreasonable and vexatious manner because: (1) the Amended Complaint was never meant to stand on its merits and (2) the timing of the filing— when viewed in context of the entire record—strongly suggests it was filed to delay the proceedings and the ultimate dismissal of the case.

i.

The Amended Complaint sought relief under the same cause of action (state law wrongful discharge) as the original complaint. *Compare* (*Curry II,* Compl., ¶¶ 59–68, ECF No. 1-2) *with* (*Curry II,* Am. Compl. ¶¶ 69–78, ECF No. 16). The Amended Complaint, however, was never meant to stand on its merits but was instead a halfhearted attempt to force the Court to remand the case. The Amended Complaint's jurisdictional statement makes this point evident: "Respectfully, this Honorable Court *does not have jurisdiction* over this matter as (a) diversity of citizenship does not exist; and (b) this dispute does not raise a question of federal law." (*Curry II,* Am. Compl. ¶ 4 (emphasis added).) But Weisberg had *already filed* a motion to remand. (*Curry II,* ECF No. 10.) If he believed his remand arguments were meritorious, filing an Amended Complaint would be unnecessary and serve only to needlessly multiple the proceedings.

The Amended Complaint also contained very few amendments—most of the changes are cosmetic or irrelevant.[11] No change responds to Defendants' motion-to-dismiss arguments: The Amended Complaint does not attempt to cure deficiencies in the original Complaint. If the Amended Complaint succeeded in doing anything, it was

---

[11] For example, paragraph 19 of the Amended Complaint confusingly references new defendants: "During this time, Hoffa also sent individuals, including Defendant, John Doe 1, Greg Yerace, to various local chapters in order to strong-arm the members into voting 'Yes.'" (*Curry II,* Am. Compl. ¶ 19.) But "John Doe 1, Greg Yerace" was not listed among Defendants UPS and Local 623 at the beginning of the Amended Complaint and nothing in the record suggests Yerace was served with the Amended Complaint—*i.e.*, Yerace isn't a defendant. This addition to the Amended Complaint is therefore irrelevant.
    This same deficiency occurs later in the Amended Complaint at paragraph 46: "Defendant, John Doe 2, Teamsters Local 623 President, Bill Morris, who Plaintiff had previously ran against, represented Plaintiff before the Hearing Panel—Plaintiff was not given a choice of who would represent him." (*Curry II,* Am. Compl. ¶ 46.) Bill Morris is not listed among the other Defendants and there is no record that Morris was served with the Amended Complaint.
    The Amended Complaint includes other irrelevant additions. Paragraphs 40 and 66 contain new allegations that Curry's statutory and constitutional rights were violated because of Defendants' actions. But the Amended Complaint does not assert any claims under any statute or constitutional provision. It contains only a single claim for wrongful discharge—the same claim brought in the original Complaint.

in making it clearer that Curry's claim was preempted by the LMRA. In its handful of new factual allegations, the Amended Complaint further establishes that Curry's wrongful discharge claim will require an interpretation of a collective bargaining agreement, making it preempted by the LMRA. *See, e.g.* (*Curry II,* Am. Compl. ¶¶ 51–53 (alleging that the *union* grievance process pursuant to the *Collective Bargaining Agreement* improperly handled Curry's wrongful termination grievance).)

### ii.

Not only is the Amended Complaint substantively dubious, its timing indicates it was filed to delay the proceedings. Weisberg filed the Amended Complaint while his motion to remand was pending and just as his time to respond to Defendants' motions to dismiss was about to expire. As recounted above, after Defendants' filed their motions to dismiss, Weisberg filed a motion to stay the case pending the Court's adjudication of his motion to remand or in the alternative, for a fourteen-day extension of time to respond to Defendants' motions to dismiss. (*Curry II,* ECF No. 11.) After the Court denied the motion to stay, (*Curry II,* ECF No. 13), Weisberg filed a new motion, this time seeking a fourteen-day extension of time to file a response to Defendant's motions to dismiss. (*Curry II,* ECF No. 14.) Apparently thinking this request for more time would be denied, and unwilling to file a response to Defendants' motions to dismiss, Weisberg decided to file the Amended Complaint—and he did so on the *same day* he asked the Court for an extension of time.[12] And Weisberg essentially admitted this at the show cause hearing:

---

[12] As explained above, Weisberg first filed a document styled as a "notice," that was, in reality, an Amended Complaint. (*Curry II,* ECF No. 15.) Three days later, on July 6, 2017, Curry refiled this document (with slight modifications), this time correctly styling it on the docket as an Amended Complaint. (*Curry II,* ECF No. 16.)

| | |
|---|---|
| Mr. Weisberg: | Your Honor, this has been nothing but my attempt to further my client's rights, which I believe in. It's not his fault, it's mine. At all times *I tried to slow,* to get to this point*,* which is the remand, and – |
| The Court: | And at all times you've tried to slow to get – |
| Mr. Weisberg: | I meant, *stop any other proceedings* to get to the remand issue, which is the central issue. |

(*Curry II,* Tr. of Hr'g, at 59:13–20 (emphasis added).) There is no other logical interpretation of these events—Weisberg only sought to delay the proceedings by filing the Amended Complaint.

## C.

After a court makes a finding of bad faith, "the appropriateness of assessing attorneys' fees against counsel under section 1927 is a matter for the district court's discretion." *Ford*, 790 F.2d at 347 (citing *Baker*, 764 F.2d at 210). "To properly exercise this discretion, the district court must balance the equities between the parties and may award attorney's fees whenever overriding considerations indicate the need for such a recovery." *Id.* "Thus, a district court may, in its discretion, refuse to award attorney's fees even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice." *Id.*

Finally, if the Court grants sanctions under § 1927, it "must only impose costs and expenses that result from the particular misconduct." *In re Prudential*, 278 F.3d at 188 (3d Cir. 2002). "Moreover, these costs and expenses are limited to those that could be taxed under 28 U.S.C. § 1920." *Id.; see also Goodyear Tire & Rubber Co. v. Haeger*,

137 S. Ct. 1178, 1186 (2017) (describing the "causal link" required between "misconduct and fees" under § 1927).

The Defendants shall file petitions, to which Weisberg may respond, detailing their costs, expenses and attorneys' fees incurred *because of* Curry's filing of the Amended Complaint, (*Curry II,* ECF No. 16). The Court will consider the petitions and any response, balance the equities and enter the appropriate Order thereafter.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.