## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT CURRY,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., *et al.*,<br><br>*Defendants.* | CIVIL ACTION<br>NO. 17-2331 |

**PAPPERT, J.**                                            **October 25, 2017**

### MEMORANDUM

Defendants United Parcel Service, Inc. and Teamsters Local 623 seek attorneys' fees under 28 U.S.C. § 1927 and Local Civil Rule 83.6.1 for work that resulted from Robert Curry's counsel's bad faith filing of the Amended Complaint. After considering the reasonableness of the requests and balancing the equities between the parties, the Court orders Curry's attorney, Matthew Weisberg, to pay UPS $12,576.00 and Local 623 $7,080.00.

## I.

Curry sued UPS and Local 623 after he was fired in May of 2015. The case was ultimately resolved on the merits when the Court denied Curry's Motion to Remand and granted the Defendants' Motions to Dismiss.[1] (ECF Nos. 34 & 35.) The case's

---

[1]     On September 28, 2017, Curry appealed the case's dismissal. (ECF No. 49.) District Courts retain the power to adjudicate collateral matters such as sanctions after the entry of final judgment and the filing of a notice of appeal. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 98 (3d Cir. 2008). Further, motions for sanctions under 28 U.S.C. § 1927 are not subject to the supervisory rule established in *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988), requiring certain motions for sanctions to be decided prior to or concurrent with final disposition of the case. *In re Schaefer*, 542 F.3d at 101–02.

sordid history is presented in all its glory in the Court's August 30 Memorandum, and will mercifully not be repeated here.[2]  (ECF No. 36.)

Prior to dismissal, Defendants filed Motions for Sanctions pursuant to 28 U.S.C. § 1927 and Local Civil Rule 83.6.1.  (ECF Nos. 20 & 22.)  The Court ordered Weisberg to show cause why it should not award the Defendants their costs, expenses, and attorneys' fees incurred as a result of Weisberg's filing of the Amended Complaint. (ECF No. 31.)  After holding a hearing, the Court ruled that Weisberg acted in bad faith in filing the Amended Complaint and with the purpose of multiplying the proceedings through conduct that was unreasonable and vexatious because: (1) the Amended Complaint was never meant to stand on its merits and (2) the timing of the filing— when viewed in context of the entire record—strongly suggested it was filed to delay the proceedings and the ultimate dismissal of the case.  (ECF No. 36.)

The Court reserved ruling on the sanctions motions, requesting that the Defendants file fee petitions detailing their costs, expenses and attorneys' fees incurred because of Curry's filing of the Amended Complaint.  (ECF No. 37.)  On September 14, 2017, counsel for both UPS and Local 623 filed Fee Petitions.  (ECF Nos. 38 & 39.)  UPS requested attorneys' fees and costs in the amount of $19,651.60 and Local 623 requested $13,338.00 in fees, for a total of $32,989.60.  Curry filed an omnibus response on September 18, 2017.  (ECF No. 40.)  Defendants filed their replies on September 20, 2017 and September 26, 2017, (ECF Nos. 43 & 47), and Curry filed a sur-reply on October 03, 2017, (ECF No. 51).

---

[2]      The facts of Curry's underlying labor dispute are outlined in detail in the Court's separate August 30 Memorandum denying Curry's Motion to Remand.  (ECF No. 34.)

## II.

Once a court finds bad faith, "the appropriateness of assessing attorneys' fees against counsel under section 1927 is a matter for the district court's discretion." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (citing *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 210 (3d Cir. 1985)). "The language and purpose of the statute reflect that these sanctions are aimed at deterring lawyers' bad faith conduct that disrupts the administration of justice by multiplying proceedings," *In re Prosser*, 777 F.3d 154, 161 (3d Cir. 2015), or conduct that "*intentionally* and unnecessarily delay[s] judicial proceedings," *LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC*, 287 F.3d 279, 288 (3d Cir. 2002). *See also In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) ("[T]he principal purpose of sanctions under § 1927 is 'the deterrence of intentional and unnecessary delay in the proceedings.'") (quoting *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.,* 103 F.3d 294, 297 (3d Cir. 1996)).

"'[O]f all the duties of the judge, imposing sanctions on lawyers is perhaps the most unpleasant.' Yet, none is more important." *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 458, 459 (E.D. Pa. 1998) (quoting William W. Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 205 (1985)). The imposition of sanctions for willful abuses or manipulations of the legal system is essential to maintaining the public's trust in the system and protecting innocent parties from unjustified legal expenses. *See id.* However, the statute should be "'construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" *LaSalle*, 287 F.3d at 289 (quoting *Mone v. Comm'r of Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985)). Courts should exercise sanctioning

power "'only in instances of a serious and studied disregard for the orderly process of justice.'" *Id.* at 288 (quoting *Ford*, 790 F.2d at 347).

This is one such instance. Weisberg's conduct went far beyond zealous advocacy. Indeed, it went further than mere rank incompetence. His repeated filings and tactics were designed to manipulate the legal system, impose unnecessary and unjustified expenses on the Defendants, and flout the rules governing litigation, not to mention those governing his conduct as an attorney. The Amended Complaint was on its face insufficient to stand on its own. A very basic principle of federal civil procedure, learned by all first-year law students (well, perhaps all but one), is that the court must have subject matter jurisdiction over the action. In fact, the federal rules require a "short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Here, Weisberg filed a complaint which read, "Respectfully, this Honorable Court does not have jurisdiction over this matter." (ECF No. 16.) The Amended Complaint was thus not only deficient, but this deficiency was known to counsel and memorialized on the second page of the filing.

Further, the record reveals that Weisberg filed the complaint in an attempt to delay the proceeding and avoid responding to meritorious motions to dismiss. The Court's August 30 Memorandum, (ECF No. 36), recounts Weisberg's repeated procedural shenanigans in painful detail. The filing of the Amended Complaint was consistent with his numerous prior attempts to avoid deadlines and litigate this case outside of the rules.

### III.

Once the Court decides sanctions are warranted, § 1927 permits the Court to award reasonable attorneys' fees and "costs and expenses that result from the particular misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002) (citing *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995)); 28 U.S.C. § 1927.  "The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).  The lodestar rate is "strongly presumed" to result in a reasonable fee. *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557 (1992)).  *See also Souryavong v. Lackawanna Cty.,* 872 F.3d 122, 128 (3d Cir. 2017) (explaining that the lodestar calculation carries a strong presumption of reasonableness and includes most, if not all, of the factors relevant to determining a reasonable fee).  The requesting party must demonstrate that its requested rates and hours are reasonable by submitting "'evidence supporting the hours worked and rates claimed.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

### A.

Generally, the applicable hourly rate is determined by reference to the prevailing market rates in the community. *Washington*, 89 F.3d at 1035 (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)).  "The fee schedule established by Community Legal

5

Services, Inc. ("CLS") 'has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia.'" *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (alteration in original). "Once the [requesting party] has made the *prima facie* showing with respect to the appropriate hourly rate, that rate may be contested, 'but only with appropriate record evidence.'" *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001) (quoting *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997)).

### 1.

UPS requests attorneys' fees in the amount of $19,648.00,[3] calculated by multiplying the number of hours counsel worked by an hourly rate of $320.

The $320 rate requested by UPS is reasonable. Gary M. Tocci, a partner at Reed Smith and a member of the firm's Labor & Employment Group, submitted an affidavit in support of UPS's fee petition. (ECF No. 38, Ex. A.) The affidavit states that three lawyers worked on this case for UPS: Tocci; Molly Q. Campbell, a senior associate; and Kristen M. Ashe, a junior associate. Tocci graduated from Temple University School of Law in 1987. (ECF No. 38, Ex. A.) CLS of Philadelphia lists a rate of $620–$650 per hour for attorneys with over twenty-five years of experience. Campbell is a senior associate in Reed Smith's Complex Litigation Group. She graduated from the University of Pittsburgh School of Law in 2011. (ECF No. 38, Ex. A.) CLS of Philadelphia lists a rate of $270–$340 per hour for attorneys with between six to ten years of experience. Ashe is a junior associate, also in the firm's Complex Litigation Group. She graduated from Villanova University School of Law in 2016. (ECF No. 38,

---

[3] UPS also seeks $3.60 in costs, which the Court, due to its *de minimus* amount, need not address.

Ex. A.)  CLS of Philadelphia lists a rate of $180–$200 per hour for attorneys with fewer than two years of experience post-law school.  The average hourly rate for the lawyers who worked on the case is thus approximately $360–$400.[4]  Reed Smith and UPS agreed to a blended hourly rate of $320 for all work performed in this case, regardless of the lawyer's seniority.  The negotiated rate of $320 falls below the attorneys' combined average hourly rate.

Further, use of the $320 rate is reasonable in light of the hours actually billed by each lawyer.  The table included as Exhibit B to UPS's petition provides the total number of hours billed by Reed Smith.  Breaking the table down by lawyer and applying the low end of the CLS rate ranges to each to determine the lawyers' lodestars demonstrates that UPS would have paid *more* if each lawyer had an individual rate that directly reflected his or her experience:

---

[4]    The average range was calculated by adding the three rates at the low end of the range and the three rates at the high end of the range, and dividing each sum by three.

| | Tocci | Campbell | Ashe |
|---|---|---|---|
| | 0.5 | 0.6 | 0.7 |
| | 0.7 | 1.2 | 2.2 |
| | 0.6 | 0.5 | 1.6 |
| | 1.2 | 1.2 | 0.3 |
| | 0.4 | 0.4 | 0.9 |
| | 0.8 | 0.7 | 1.3 |
| | 0.7 | 1.2 | 4.5 |
| | 0.2 | 0.1 | 0.6 |
| | 0.5 | 1.3 | 0.8 |
| | 0.3 | 0.8 | 1.5 |
| | 0.5 | 0.4 | 1.6 |
| | 1.0 | 0.9 | 4.9 |
| | 0.3 | 2.5 | 2.1 |
| | 0.8 | 0.9 | 1.6 |
| | 2.5 | 0.3 | |
| | 0.5 | 0.2 | |
| | 0.8 | 1.8 | |
| | 0.8 | 1.5 | |
| | 1.0 | 0.3 | |
| | 1.2 | 0.6 | |
| | 0.8 | 0.2 | |
| | 0.8 | | |
| | 0.8 | | |
| | 1.5 | | |
| **Total Hours Billed** | **19.2** | **17.6** | **24.6** |

| | Tocci | Campbell | Ashe |
|---|---|---|---|
| Hours Billed | **19.2** | **17.6** | **24.6** |
| Low-end CLS Rate | $ 620.00 | $ 270.00 | $ 180.00 |
| Lodestar per Lawyer | $ 11,904.00 | $ 4,752.00 | $ 4,428.00 |
| **Total Lodestar** | | | **$ 21,084.00** |

8

**2.**

Local 623 requests attorneys' fees in the amount of $13,338.00.  This figure was calculated by multiplying the number of hours billed by an hourly rate of $380.  Lisa C. Leshinski of Freedman & Lorry PC represents Local 623 in this case and submitted an affidavit in support of its petition.  She graduated from Rutgers University School of Law in 2005 and has been practicing exclusively union-side labor and employment law for the past twelve years.  (ECF No. 39; ECF No. 47, Ex. I.)  CLS of Philadelphia lists a rate of $360–$440 per hour for attorneys with between eleven and fifteen years of experience.

Leshinski's firm and Local 623 agreed to a below-market, blended rate of $300 per hour for all work performed, regardless of seniority.  (ECF No. 39; ECF No. 47, Ex. I.)  The union is thus requesting "enhanced fees" at a rate of $380, consistent with CLS's rates for lawyers with Leshinski's experience.  However, the primary purpose of § 1927 is deterrence, not compensation.[5]  *See Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 193–94 (3d Cir. 1988).  In light of that purpose and the Court's duty to impose only those sanctions that are equitable and in the interests of justice, the Court will apply the $300 rate actually paid by the union, which it finds to be reasonable.

**3.**

Weisberg did not submit an affidavit or any other evidence contesting the reasonableness of Reed Smith's and Freedman and Lorry's rates.  Inasmuch as both firms negotiated rates that fall below the rates specified in the CLS survey, (*see* ECF

---

[5]     While courts have awarded attorneys' fees at reasonable rates higher than blended below-market rates agreed upon by the parties, they have done so in mandatory fee shifting cases, which further distinct public policies not at issue in a case of discretionary sanctions under § 1927.  *See, e.g.*, *Kean v. Stone*, 966 F.2d 119 (3d Cir. 1992).

No. 38, Ex. A; ECF No. 39; ECF No. 47, Ex. I), it would have been difficult for Weisberg

to show that the fees were unreasonable.  Weisberg does argue that the CLS survey is

unreliable.  He does not, however, advance any new or compelling arguments

warranting a departure from *Maldonado*, in which the Third Circuit approved of the

CLS survey and relied on it to establish reasonable rates when the parties offered little

evidence of market rates.  256 F.3d 181.

**B.**

Courts must conduct "thorough and searching" analyses of the hours claimed in

fee requests.  *Interfaith*, 426 F.3d at 711 (quoting *Evans*, 273 F.3d at 362).  A fee

petition must "be specific enough to allow the district court 'to determine if the hours

claimed are unreasonable for the work performed.'"  *Washington*, 89 F.3d at 1037

(quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1993) (citation

omitted)).  To challenge a fee request, opponents must state their grounds "with

sufficient specificity."  *Interfaith*, 426 F.3d at 711.  The court then considers whether

the time charged is reasonable, excluding "'hours that are excessive, redundant, or

otherwise unnecessary.'"  *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x

93, 96 (3d Cir. 2006) (quoting *Hensley*, 461 U.S. at 434).  In fact, the Court must "'go

line, by line, by line' through the billing records supporting the fee request" to

determine the reasonableness of the requested fees.  *Evans*, 273 F.3d at 362.

Both UPS and Local 623 provided exhibits in support of their fee requests with

line-by-line descriptions of the hours worked and tasks performed.  Both Defendants,

with few exceptions, limited their requests to work resulting from the Amended

Complaint as required by § 1927 and the Court's August 30 Order.  Further, UPS did

10

not request all fees incurred as a result of the Amended Complaint, but only those fees counsel deemed appropriate to request under the circumstances.  (ECF No. 38, Ex. A.)

Weisberg did not object to particular line items "with sufficient specificity," *Interfaith*, 426 F.3d at 711, by arguing, for example, that the time billed on a certain task was excessive or that the claimed work was unrelated to the Amended Complaint. He does object to the fact that UPS had three attorneys working on the case, that they seek fees associated with responding to Curry's Motion to Remand, and that their billing entries include time spent communicating with its client and opposing counsel, as well as "editing, strategizing, revisions, and preparations."  (ECF No. 40.)  With respect to Local 623, Weisberg objects that its request includes time spent responding to the Motion to Remand and on its Rule 11 Motion, which the Court denied, and includes prohibited block-billing and communications with its client and opposing counsel.  Further, Weisberg generally objects that the hours requested by the Defendants are not "causally attendant to the sanctioned conduct and/or are duplicative, excessive, and not reasonable and necessary, especially in light of Defendants' work already preformed."  (ECF No. 40.)

The Court has conducted a thorough line-by-line review of both UPS's and Local 623's submissions and makes the following modifications based on its belief that the hours were either excessive, redundant, or otherwise unrelated to the bad faith conduct, the filing of the Amended Complaint.

**1.**

The Court will limit the hours requested by UPS as follows:

- Tocci's time reviewing and analyzing Curry's Amended Complaint and issuing research instructions is adjusted downward from .5 hours to 0 hours.  *See infra* Appendix A ("App. A") at 18.

- Campbell's time strategizing UPS's response to the Amended Complaint is adjusted downward from .6 hours to .3 hours.  *See infra* App. A at 18.

- Tocci's time strategizing UPS's response to the Amended Complaint in light of Curry's outstanding motion to remand is adjusted downward from 1.2 hours to 0 hours.  *See infra* App. A at 18.

- Campbell's time reviewing and analyzing Local 623's opposition to Curry's Motion to Remand for possible additions to UPS's Motion to Dismiss the Amended Complaint is adjusted downward from 1.2 hours to .6 hours. *See infra* App. A at 18.

- Ashe's time researching and analyzing Third Circuit case law interpreting the award of sanctions pursuant to 28 U.S.C. § 1927 and Local Rule 83.6.1 is adjusted downward from .3 hours to 0 hours.  *See infra* App. A at 19.

- Campbell's time communicating with counsel for co-defendant is adjusted downward from .7 hours to 0 hours.  *See infra* App. A at 19.

- Ashe's time editing and revising UPS's Motion to Dismiss the Amended Complaint is adjusted downward from 4.5 hours to 2.5 hours.  *See infra* App. A at 19.

- Campbell's time editing and revising UPS's Motion to Dismiss the Amended Complaint is adjusted downward from 1.2 hours to .6 hours. *See infra* App. A at 19.

- Campbell's time reviewing Local 623's Motion to Dismiss the Amended Complaint is adjusted downward from 1.3 hours to .6 hours. *See infra* App. A at 19.

- Campbell's time reviewing Local 623's Motion for Sanctions against Plaintiff's Counsel is adjusted downward from .8 hours to .3 hours. *See infra* App. A at 19.

- Ashe's time editing and revising UPS's Reply Brief is adjusted downward from 4.9 hours to 0 hours. *See infra* App. A at 20.

- Campbell's time drafting and revising UPS's Reply Brief in support of the motion to dismiss is adjusted downward from 2.5 hours to .5 hours. *See infra* App. A at 20.

- Ashe's time key citing and proofreading UPS's Reply Brief to Plaintiff's Opposition to Motion to Dismiss Amended Complaint is adjusted downward from 2.1 hours to 0 hours. *See infra* App. A at 20.

- Campbell's time communicating with the client is adjusted downward from .2 hours to 0 hours. *See infra* App. A at 20.

- Tocci's time reviewing two binders of materials to prepare for oral argument on August 16, including all pleadings, outlines, case authority on motion to remand, motion to dismiss, and motion for sanctions is adjusted downward from 2.5 hours to 1.3 hours. *See infra* App. A at 21.

13

- Campbell's time strategizing oral argument positions and reviewing Plaintiff's case law and arguments is adjusted downward from .3 hours to 0 hours. *See infra* App. A at 21.

- Tocci's time preparing an outline for oral argument, specifically on the motion to remand issues is adjusted downward from .8 hours to 0 hours. *See infra* App. A at 21.

- Tocci's time preparing for oral argument, specifically on the Plaintiff's Motion to Remand, including reviewing case law, updating case law cited by plaintiff, and outlining points to raise at argument is adjusted downward from 1.0 hours to 0 hours. *See infra* App. A at 21.

- Campbell's time communicating with counsel for co-defendant is adjusted downward from .6 hours to 0 hours. *See infra* App. A at 21.

- Tocci's time preparing for oral argument on motion for sanctions under 28 U.S.C. § 1927 is adjusted downward from .8 hours to 0 hours. *See infra* App. A at 21.

- Tocci's time preparing for oral argument on the motion to remand is adjusted downward from .8 hours to 0 hours. *See infra* App. A at XX.

Multiplying UPS's $320 per hour rate by the hours reasonably expended after the above downward adjustments yields a total of $12,576.00 in attorneys' fees.

14

**2.**

The Court will limit the hours requested by Local 623 as follows:

- The time spent reviewing the amended complaint and drafting a response to the motion to remand and stay is adjusted downward from 2.1 hours to .5 hours.  *See infra* Appendix B ("App. B") at 22.

- The time spent drafting an opposition to the motion to remand and e-filing the opposition is adjusted downward from 3.3 hours to 0 hours.  *See infra* App. B at 22.

- The time spent drafting the motion for sanctions and e-filing the motion is adjusted downward from 1.9 hours to .7 hours.  *See infra* App. B at 22.

- The time spent drafting a reply in support of the motion to dismiss and e-filing the reply is adjusted downward from 4.0 hours to 0 hours.  *See infra* App. B at 22.

- The time spent discussing the case with the client as well as with UPS's counsel is adjusted downward from 1.4 hours to 0 hours.  *See infra* App. B at 22.

Weisberg's objection to counsel's "block billing" is without merit.  Fee requests need only contain adequate specificity in order for the Court to conduct a thorough analysis of the reasonableness of the request.  *See McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 671 (E.D. Pa. 2008) ("For example, a fee petition with the phrase 'miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses: 1.3 hours' contains adequate specificity.") (quoting *Rode*, 892 F.2d at 1191 n.13); *Pasternack v. Klein*, No. 14-2275 (E.D. Pa. Oct. 17, 2017) ("Block

billing—the practice of recording multiple tasks in one, non-itemized entry—is permissible so long as 'there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks.'") (quoting *Hatchett v. Cty. of Phila.*, Civ. A. No. 09-1708, 2010 WL 4054285, at *4 (E.D. Pa. Oct. 15, 2010)). Local 623's petition meets that standard.

Multiplying the $300 rate by the hours reasonably expended after the above downward adjustments yields a total of $7,080.00 in attorneys' fees.

### 3.

Finally, the Court turns to the assessment of the circumstances surrounding the case and whether mitigating factors warrant a further reduction in the total sanction amount.  In order for the Court to properly exercise its discretion to impose sanctions under § 1927, it "must balance the equities between the parties and may award attorney's fees whenever overriding considerations indicate the need for such a recovery." *Ford*, 790 F.2d at 347.  Sanctions that are "greater than necessary to achieve the public policy objectives underlying the statute" should not be imposed.  *Loftus*, 8 F. Supp. 2d at 464.  "Thus, a district court may, in its discretion, refuse to award attorney's fees even where it finds the existence of bad faith, if, in balancing the equities, it nevertheless determines that an award in a particular case would not serve the interests of justice." *Ford*, 790 F.2d at 347 (citing *Perichak v. Int'l Union of Elec. Radio & Mach. Workers, Local 601*, 715 F.2d 78, 80 (3d Cir. 1983)).  An attorney who has been found to act in bad faith has the burden of showing "that mitigating factors and circumstances warrant the exercise of discretion against the award of attorneys' fees." *Id*. (citing *Perichak*, 715 F.2d at 81).  One relevant mitigating factor is the

16

sanctioned party's ability to pay. *Jones v. Pittsburg Nat'l Corp.*, 899 F.2d 1350, 1359 (3d Cir. 1990) (citing *Doering*, 857 F.2d at 195).

Consideration of the mitigating factors and circumstances surrounding this case does not warrant further reductions of the lodestar calculations. Weisberg did not offer any evidence of his inability to pay. He merely stared that "his office is in Morton, Pennsylvania—a very small law firm with modest revenue" and "[t]he amount of sanctions sought will economically bury counsel." (ECF No. 40.) While the amount of fees deemed reasonable by the Court may impose a hardship on Weisberg, the sanction is consistent with the purpose of § 1927. The Court is imposing this sanction to impress upon counsel the importance of his oath as an officer of the court and the fundamental purpose of the adversary system, which is to promote the discovery of truth.

The Court awards $19,656.00 in attorneys' fees, $12,576.00 to be paid to UPS and $7,080.00 to be paid to Local 623.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

**Appendix A:  UPS's Fees**

| Initials | Date | Narrative | Hours Claimed | Hours Revised | Rate | Subtotal |
|---|---|---|---|---|---|---|
| GMT | 7/3/2017 | Review and analyze Plaintiff's Amended Complaint and issue research instructions. | 0.5 | 0 | $320 | $0 |
| GMT | 7/5/2017 | Review and analyze newly filed 73-paragraph Amended Complaint. | 0.7 | 0.7 | $320 | $224 |
| MQC | 7/5/2017 | Strategize UPS's response to Plaintiff's Amended Complaint. | 0.6 | 0.3 | $320 | $96 |
| MQC | 7/5/2017 | Review and analyze Plaintiff's Amended Complaint and any issues concerning case strategy and motion to dismiss arguments. | 1.2 | 1.2 | $320 | $384 |
| KMA | 7/5/2017 | Research and analyze Third Circuit case law on viability of moving for sanctions against Plaintiff's counsel and summarize same. | 0.7 | 0.7 | $320 | $224 |
| GMT | 7/5/2017 | Teleconference with M. Campbell and K. Ashe to discuss strategy for addressing Plaintiff's Amended Complaint and issue research instructions to K. Ashe. | 0.6 | 0.6 | $320 | $192 |
| GMT | 7/5/2017 | Strategize UPS's response to Amended Complaint in light of Plaintiff's outstanding Motion to Remand. | 1.2 | 0 | $320 | $0 |
| MQC | 7/6/2017 | Communications with counsel for co-defendant. | 0.5 | 0.5 | $320 | $160 |
| MQC | 7/6/2017 | Review and analyze Local 623's opposition to Plaintiff's Motion to Remand for possible additions to UPS's Motion to Dismiss the Amended Complaint. | 1.2 | 0.6 | $320 | $192 |
| MQC | 7/6/2017 | Review and analyze Plaintiff's Second Amended Complaint. | 0.4 | 0.4 | $320 | $128 |
| KMA | 7/6/2017 | Research and analyze Third Circuit case law on viability of sanctions against Plaintiff's counsel and summarize same. | 2.2 | 2.2 | $320 | $704 |
| GMT | 7/6/2017 | Analyze factual allegations in Amended Complaint, specifically regarding Atlantic area panel hearing. | 0.4 | 0.4 | $320 | $128 |

| GMT | 7/6/2017 | Analyze factual and legal allegations in Amended Complaint and compare to original Complaint. | 0.8 | 0.8 | $320 | $256 |
|---|---|---|---|---|---|---|
| KMA | 7/7/2017 | Research and analyze Third Circuit case law interpreting the award of sanctions pursuant to 28 U.S.C. 1927 and Local Rule 83.6.1 | 1.6 | 1.6 | $320 | $512 |
| KMA | 7/8/2017 | Research and analyze Third Circuit case law interpreting the award of sanctions pursuant to 28 U.S.C. 1927 and Local Rule 83.6.1 | 0.3 | 0 | $320 | $0 |
| KMA | 7/9/2017 | Prepare and draft UPS's Motion to Dismiss Amended Complaint. | 0.9 | 0.9 | $320 | $288 |
| KMA | 7/10/2017 | Prepare and draft UPS's Motion to Dismiss Amended Complaint. | 1.3 | 1.3 | $320 | $416 |
| MQC | 7/10/2017 | Communications with counsel for co-defendant. | 0.7 | 0 | $320 | $0 |
| KMA | 7/12/2017 | Edit and revise UPS's Motion to Dismiss Amended Complaint. | 4.5 | 2.5 | $320 | $800 |
| KMA | 7/13/2017 | Edit and revise UPS's Motion to Dismiss Amended Complaint. | 0.6 | 0.6 | $320 | $192 |
| MQC | 7/13/2017 | Edit and revise UPS's Motion to Dismiss Amended Complaint. | 1.2 | .6 | $320 | $192 |
| KMA | 7/17/2017 | Edit and revise UPS's Motion to Dismiss Amended Complaint. | 0.8 | 0.8 | $320 | $256 |
| MQC | 7/18/2017 | Communications with client. | 0.1 | 0.1 | $320 | $32 |
| MQC | 7/18/2017 | Review Local 623's Motion to Dismiss the Amended Complaint. | 1.3 | .6 | $320 | $192 |
| MQC | 7/19/2017 | Review Local 623's Motion for Sanctions Against Plaintiff's Counsel. | 0.8 | .3 | $320 | $96 |
| GMT | 7/20/2017 | Address issues regarding Local 623's Motion to Dismiss filings. | 0.7 | 0.7 | $320 | $224 |
| GMT | 7/26/2017 | Strategize UPS's Reply Brief in support of Motion to Dismiss Amended Complaint and issue instructions. | 0.2 | 0.2 | $320 | $64 |
| MQC | 7/26/2017 | Communications with counsel for co-defendant. | 0.4 | 0.4 | $320 | $128 |
| MQC | 7/27/2017 | Review and analyze plaintiff's opposition to motion to dismiss and motion for sanctions. | 0.9 | 0.9 | $320 | $288 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **GMT** | 7/27/2017 | Address issues for reply to Plaintiff's opposition to motion to dismiss. | 0.5 | 0.5 | $320 | $160 |
| **GMT** | 7/31/2017 | Strategize UPS's Reply Brief in support of Motion to Dismiss Amended Complaint and outline issues for discussion with M. Campbell and K. Ashe. | 0.3 | 0.3 | $320 | $96 |
| **KMA** | 7/31/2017 | Prepare and draft UPS's reply to plaintiff's opposition to motion to dismiss. | 1.5 | 1.5 | $320 | $480 |
| **KMA** | 8/1/2017 | Edit and revise UPS's Reply Brief. | 1.6 | 1.6 | $320 | $512 |
| **KMA** | 8/2/2017 | Edit and revise UPS's Reply Brief. | 4.9 | 0 | $320 | $0 |
| **MQC** | 8/2/2017 | Draft and revise UPS's Reply Brief in support of the motion to dismiss. | 2.5 | .5 | $320 | $160 |
| **MQC** | 8/3/2017 | Review and analyze Local 623's reply to plaintiff's opposition to motion to dismiss. | 0.9 | 0.9 | $320 | $288 |
| **KMA** | 8/3/2017 | Key cite and proofread UPS's Reply Brief to Plaintiff's Opposition to Motion to Dismiss Amended Complaint. | 2.1 | 0 | $320 | $0 |
| **KMA** | 8/2/2017 | Edit and revise UPS's Reply Brief. | 1.6 | 1.6 | $320 | $512 |
| **GMT** | 8/4/2017 | Review Local 623's filings regarding Union's reply on motion to dismiss and then on sanctions and address strategy regarding Plaintiff's counsel's new letter to Court. | 0.5 | 0.5 | $320 | $160 |
| **MQC** | 8/7/2017 | Review and analyze Judge Pappert's order regarding sanctions motion and oral argument on the pending motions and strategize re: same. | 0.3 | 0.3 | $320 | $96 |
| **MQC** | 8/7/2017 | Communications with client. | 0.2 | 0 | $320 | $0 |
| **MQC** | 8/7/2017 | Prepare materials in preparation for oral argument. | 1.8 | 1.8 | $320 | $576 |
| **GMT** | 8/9/2017 | Review preparation notes for oral argument on Plaintiff's Motion to Remand; motions to dismiss; and motion for sanctions against Plaintiff's counsel. | 1.0 | 1.0 | $320 | $320 |
| **MQC** | 8/9/2017 | Draft and revise outline in preparation for oral argument. | 1.5 | 1.5 | $320 | $480 |
| **GMT** | 8/10/2017 | Communications with client. | 0.3 | 0.3 | $320 | $96 |
| **GMT** | 8/10/2017 | Outline pleadings from Curry I and Curry II to prepare for oral argument on motion to dismiss and other issues on August 16. | 0.8 | 0.8 | $320 | $256 |

| GMT | 8/13/2017 | Review two binders of materials to prepare for oral argument on August 16, including all pleadings, outlines, case authority on motion to remand, motion to dismiss, and motion for sanctions. | 2.5 | 1.3 | $320 | $416 |
|---|---|---|---|---|---|---|
| GMT | 8/14/2017 | Review case authority regarding preemption in preparation for oral argument on motion to dismiss. | 0.5 | 0.5 | $320 | $160 |
| GMT | 8/14/2017 | Prepare outline for oral argument, specifically on 28 U.S.C. 1927 sanctions issues. | 0.8 | 0.8 | $320 | $256 |
| MQC | 8/14/2017 | Strategize oral argument position and review Plaintiff's case law and arguments. | 0.3 | 0 | $320 | $0 |
| GMT | 8/14/2017 | Prepare outline for oral argument, specifically on motion to remand issues. | 0.8 | 0 | $320 | $0 |
| GMT | 8/15/2017 | Prepare for oral argument relative to Plaintiff's Motion to Remand, including review of case law, updating case law cited by plaintiff, and outline points to raise at argument. | 1.0 | 0 | $320 | $0 |
| GMT | 8/15/2017 | Prepare for oral argument, specifically on motion to dismiss, including review of case authority, updating case authority, and all issues including statute of limitations defense. | 1.2 | 1.2 | $320 | $384 |
| MQC | 8/15/2017 | Communications with counsel for co-defendant. | 0.6 | 0 | $320 | $0 |
| GMT | 8/16/2017 | Prepare for oral argument on motion for sanctions under 28 U.S.C. 1927. | 0.8 | 0 | $320 | $0 |
| GMT | 8/16/2017 | Prepare for oral argument on motion to dismiss. | 0.8 | 0.8 | $320 | $256 |
| MQC | 8/16/2017 | Prepare for oral argument by strategizing responses to possible questions. | 0.2 | 0.2 | $320 | $64 |
| GMT | 8/16/2017 | Prepare for oral argument on motion to remand. | 0.8 | 0 | $320 | $0 |
| GMT | 8/16/2017 | Attend oral argument. | 1.5 | 1.5 | $320 | $480 |

| **UPS's Total Reasonable Attorneys' Fees** | **$12,576.00** |
|---|---|

**Appendix B:  Local 623's Fees**

| Initials | Date | Narrative | Hours Claimed | Hours Revised | Rate | Subtotal |
|---|---|---|---|---|---|---|
| **LCL** | 7/5/2017 | Reviewed amended complaint. Drafted response to motion to remand and stay. | 2.1 | 0.5 | 300 | $    150.00 |
| **LCL** | 7/6/2017 | Drafted opposition to motion to remand and e-filed | 3.3 | 0 | 300 | $        - |
| **LCL** | 7/10/2017 | Reviewed emails from Atty Weisberg seeking extension of time, and reviewed cases he cited concerning wrongful discharge. Drafted letter. | 1.8 | 1.8 | 300 | $    540.00 |
| **LCL** | 7/17/2017 | Drafted motion to Dismiss and started drafting motion for sanctions | 4.7 | 4.7 | 300 | $ 1,410.00 |
| **LCL** | 7/18/2017 | Drafted motion for sanctions | 1.8 | 1.8 | 300 | $    540.00 |
| **LCL** | 7/19/2017 | Drafted motion for sanctions and e-filed | 1.9 | 0.7 | 300 | $    210.00 |
| **LCL** | 7/25/2017 | Reviewed Plaintiff's filings seeking a stay and moving to bifurcate | 0.3 | 0.3 | 300 | $     90.00 |
| **LCL** | 7/26/2017 | Researched cases cited by Curry | 0.7 | 0.7 | 300 | $    210.00 |
| **LCL** | 7/28/2017 | Reviewed additional filings by Plaintiff | 0.8 | 0.8 | 300 | $    240.00 |
| **LCL** | 7/31/2017 | Drafted reply in support of motion to dismiss | 1.8 | 1.8 | 300 | $    540.00 |
| **LCL** | 8/3/2017 | Drafted reply in support of motion to dismiss and e-filed | 4.0 | 0 | 300 | $        - |
| **LCL** | 8/9/2017 | Reviewed Judge's Order and discussed with client | 0.2 | 0.2 | 300 | $     60.00 |
| **LCL** | 8/16/2017 | Preparation for oral argument and court attendance.  Reviewed case law cited by Atty. Weisberg at oral argument (Herring v. Prince Macaroni) | 5.0 | 5.0 | 300 | $ 1,500.00 |
| **LCL** | 8/18/2017 | Talked to client about case. Discussed with UPS attorneys. | 1.4 | 0 | 300 | $        - |
| **LCL** | 8/31/2017 | Reviewed Judge's decisions and emailed and called Union. | 1.3 | 1.3 | 300 | $    390.00 |
| **LCL** | 9/12/2017 | Drafted fee petition | 4.0 | 4.0 | 300 | $ 1,200.00 |
|  |  |  |  |  |  |  |
| **Local 623's Total Reasonable Attorneys' Fees** |  |  |  |  |  | **$ 7,080.00** |